EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET AL<br><br>Apelante<br><br>v.<br><br>HATILLO NURSING HOME, INC., ET AL<br><br>Apelada | **KLAN202300824** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Arecibo<br><br>Civil Núm. AR2023CV00451<br><br>Sobre: Interdicto estatuario |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Lebrón Nieves[1], el Juez Bonilla Ortiz y el Juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2023.

Comparece ante este foro el Estado Libre Asociado de Puerto Rico (ELA o "parte apelante"), y nos solicita que revisemos la *Sentencia Declaratoria Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, notificada el 5 de septiembre de 2023. Mediante esta, el foro primario desestimó la *Demanda* de interdicto estatutario presentada por el ELA.

Por los fundamentos que se exponen a continuación, se **REVOCA** el dictamen apelado.

### I.

Hatillo Nursing Home, Inc. (Hatillo Nursing Home o "parte apelada") es una corporación doméstica que cuida y alberga personas de edad avanzada de sesenta años o más, cuya licencia otorgada en virtud de la Ley Núm. 94 de 22 de junio de 1977, según enmendada, mejor conocida como *Ley de Establecimientos para Personas de Edad*

---

[1] En virtud de la Orden Administrativa OATA-2023-163, se designa al Hon. Gloria L. Lebrón Nieves.

*Avanzada*, tuvo vigencia desde el 30 de noviembre de 2020. El 4 de marzo de 2022, la Unidad de Maltrato Institucional de Adultos del Departamento de la Familia, (Departamento) investigó a la parte apelada en cuanto a un posible maltrato de envejecientes. Por consiguiente, la investigación fue encontrada con fundamentos, lo que llevó a la cancelación de la licencia el 29 de noviembre de 2022. En desacuerdo, Hatillo Nursing Home, apeló la decisión ante la Junta Adjudicativa, la cual sigue pendiente ante dicho foro.

A pesar de la cancelación de la licencia, el ELA alega que la parte apelada ha continuado operando, por consiguiente, presentaron el 9 de marzo de 2023, una *Demanda de Interdicto Estatutario y Solicitud de Entredicho Provisional.*[2] Así las cosas, el foro primario emitió y señaló una vista de interdicto provisional para el 17 de marzo de 2023.[3]

Luego de varias incidencias procesales, el 28 de marzo de 2023, el foro apelado emitió una *Sentencia Declaratoria*, mediante la cual desestimó la *Demanda* de interdicto estatutario y ordenó al Departamento a que emitiera una licencia provisional para que el Centro de Envejecientes pudiera operar.[4]

El 31 de marzo de 2023, el ELA presentó una *Moción de Reconsideración y en Solicitud de Enmiendas o Determinaciones Iniciales o Adicionales*.[5] No obstante, el foro primario, mediante *Orden*, denegó dicha moción.[6]

---

[2] *Demanda de Interdicto Estatutario y Solicitud de Entredicho Provisional*, anejo I, págs. 1-21 del apéndice del recurso.
[3] *Minuta*, anejo V, págs. 150-152 del apéndice del recurso.
[4] *Sentencia Declaratoria*, anejo X, págs. 203-218 del apéndice del recurso.
[5] *Moción de Reconsideración y en Solicitud de Enmiendas o Determinaciones Iniciales o Adicionales,* anejo XIII, págs. 219-254 del apéndice del recurso
[6] *Orden*, anejo XIV, pág. 255 del apéndice del recurso.

En desacuerdo, el 26 de mayo de 2023, la parte apelante presentó ante este Foro un recurso de apelación, Núm. KLAN202300266,[7] mediante el cual, determinamos que el foro primario debió abstenerse de atender cualquier otro reclamo que no fuese la solicitud de *injunction* estatutario.

Aun en desacuerdo, Hatillo Nursing Home solicitó reconsideración, sin embargo, fue denegada. Posteriormente, presentaron un auto de *certiorari* ante el Tribunal Supremo de Puerto Rico, el cual fue declarado *no ha lugar*.

Así las cosas, el 5 de septiembre de 2023, el foro *a quo* desestimó la *Demanda* de interdicto estatutario presentada por el ELA.[8] No obstante, sostuvo la vista del 19 de septiembre de 2023 para atender el traslado inmediato de los envejecientes en Hatillo Nursing Home, notificando que su determinación no evita el cierre del hogar, sino que lo pospone.

Inconforme con la determinación, el 18 de septiembre de 2023, el ELA presentó una apelación ante este tribunal donde alega dos errores:

> Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar la demanda, en virtud de la Regla 39.2(c) de Procedimiento Civil, y denegar la concesión del interdicto estatutario contemplado en la Ley Núm. 94-1977, a pesar de que la prueba presentada por el Estado fue suficiente para demostrar que Hatillo Nursing Home, Inc. continúa operando el establecimiento sin licencia.
>
> Erró y abusó de su discreción el Tribunal de Primera Instancia al señalar la celebración de una vista para atender el egreso de las personas de edad avanzada que se encuentran bajo el cuidado y albergue de Hatillo Nursing Home, Inc., a pesar de que desestimó la demanda y denegó el interdicto

---

[7] *Sentencia*, anejo XV, págs. 256-284 del apéndice del recurso.
[8] *Sentencia Declaratoria Enmendada*, anejo XVIII, págs. 290-301 del apéndice del recurso.

estatutario, lo que tiene el efecto de privarlo de jurisdicción para cualquier trámite posterior.

El 23 de octubre de 2023, la parte apelada compareció mediante *Alegato en Oposición de Apelación Civil*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**II.**

La Regla 57 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y los Artículos 675 y 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521 *et seq.*, son las disposiciones de ley que regulan en nuestro ordenamiento el recurso extraordinario de *injunction*. En particular, la Regla 57 de Procedimiento Civil, *supra*, establece la existencia de tres modalidades de *injunction*, a saber: (a) el entredicho provisional, (b) el *injunction* preliminar y (c) el *injunction* permanente. En materia sustantiva, "[e]l *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra." Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521.

En Puerto Rico, el interdicto es el instrumento más eficaz para vindicar los derechos protegidos por la Constitución del Estado Libre Asociado de Puerto Rico. *Pedraza Rivera v. Collazo Collazo*, 108 DPR 272, 276 (1979). Este remedio provisional se emite en cualquier momento de un pleito, después de celebrada una vista en la que las partes hayan presentado prueba en apoyo y en oposición de tal solicitud. *Mun. De Ponce v. Gobernador*,

136 DPR 776, 784 (1994). Su propósito fundamental es mantener el *status quo*, hasta tanto se celebre un juicio en los méritos para adjudicar la controversia en cuestión. *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 316 (2008).

Este recurso extraordinario va dirigido a prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a persona alguna, en los casos en que no hay otro remedio adecuado en ley. *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999). Nuestro Tribunal Supremo ha reiterado que la expedición de un *injunction* preliminar descansa en el ejercicio de la sana discreción del tribunal. *Misión Ind. P.R. v. J.P. y AAA*, 142 DPR 656, 680 (1997).

En relación al *injunction* estatutario, el tratadista Cuevas Segarra, expone que se trata de un recurso especial, distinto al interdicto clásico u ordinario. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da. ed., Estados Unidos, Pubs. JTS, 2011, T. V, pág. 1672. Este tipo de interdicto especial procura la obtención de órdenes para la paralización, ya sea inmediata, provisional o permanente, de conducta contraria a la ley. Señala que no se requiere alegación, ni prueba de daño irreparable; o sea, dicho en otras palabras, bastaría con que el demandado haya violado la ley. *Íd*. La persona legitimada para instar el recurso debería entonces acreditarle al tribunal lo siguiente: (1) que existe una ley o reglamento que regula el uso o actividad en cuestión, y (2) que los demandados están haciendo uso o realizando una actividad en violación a la ley o reglamento. *Íd*., págs. 1672-1673.

Lo determinante preliminarmente al solicitarse un *injunction* estatutario es si la situación está o no cobijada bajo el estatuto. *Cobos Liccia v. De Jean Packing Co., Inc.*, 124 DPR 896, 903 (1989). Sin embargo, el tribunal no puede actuar con automatismo, sino que debe ponderar los intereses y equidades de las partes. *Íd*. En ese sentido, el tribunal debe realizar un ponderado balance de equidad, que comprende examinar los intereses de las partes, los propósitos de la legislación y si la prueba presentada demuestra *prima facie* que el demandante está protegido por el estatuto. *Íd*.

La aplicación del mecanismo del *injunction* requiere que los tribunales ejerzan su discreción judicial con celo y buen juicio. Asimismo, el Tribunal Supremo de Puerto Rico ha indicado que el *injunction* debe concederse en aquellos casos de clara necesidad y solamente ante una demostración de indudable e intensa violación de un derecho. *APPR v. Tribunal Superior*, 103 DPR 903, 906 (1975). Nuestro más Alto Foro ha expresado que la decisión del tribunal de instancia para conceder o denegar la orden de *injunction* no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional. *ELA v. Asoc. de Auditores*, 147 DPR 669, 680 (1999).

Nuestro Tribunal Supremo ha expresado en reiteradas ocasiones que discreción "…no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho, sino la obligación de aplicar las reglas del conocimiento distintivo a ciertos hechos jurídicos con el objeto de mitigar los efectos adversos

de la Ley, a veces diferenciando unos efectos de otros." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964).

-B-

La *Ley de Establecimientos para Personas de Edad Avanzada* dispone que el Departamento de la Familia posee la facultad exclusiva para emitir licencias a toda institución dedicada al cuido de personas de edad avanzada que se establezca en Puerto Rico. Dicha licencia es requerida para operar este tipo de establecimiento en Puerto Rico, y han de operar por un periodo no mayor de dos años a lo cual se ha de solicitar la renovación. Art. 4 de la Ley Núm. 94, 8 LPRA sec. 354.

De otra parte, el Artículo 5 de la Ley Núm. 94, 8 LPRA sec. 355, establece en lo pertinente que:

> Ninguna persona, entidad, asociación, corporación, o el Gobierno Estatal o cualquier municipio u otra subdivisión política o cualquier departamento, división, junta, agencia o instrumentalidad de los mismos podrá establecer, operar o sostener un establecimiento para el cuidado de personas de edad avanzada, a menos que antes de iniciar sus operaciones solicite y se le conceda la licencia requerida en la sec. 354 de este título. Se exceptúa del cumplimiento de esta disposición a cualquier persona que cuide uno o dos personas de edad avanzada o las personas que cuidan personas de edad avanzada con los cuales tengan nexos de consanguinidad o afinidad. 8 LPRA sec. 355.

La *Ley de Establecimientos para Personas de Edad Avanzada*, establece que el Departamento de la Familia puede solicitar un interdicto ante el Tribunal de Primera Instancia para impedir que un establecimiento de cuidado de personas de edad avanzada continúe operando sin la licencia correspondiente. En ese sentido, el Artículo 14 de la Ley Núm. 94, 8 LPRA sec. 364, establece que:

> Cuando el Secretario del Departamento tenga conocimiento de que cualquier establecimiento para el cuidado de personas de edad avanzada esté operando sin la licencia correspondiente, bien porque se le haya denegado, suspendido, cancelado o porque no la haya solicitado, podrá interponer a través del Secretario de Justicia un recurso de injunction ante el Tribunal de Primera Instancia para impedir que dicho establecimiento continúe operando.

Conforme al artículo mencionado anteriormente, el Secretario del Departamento deberá probar al TPI los siguientes factores: (1) que existe un establecimiento para el cuidado de personas de edad avanzada; y (2) que el establecimiento opera sin la licencia correspondiente. La Ley Núm. 94, *supra*, faculta al Secretario del Departamento, a través del Secretario de Justicia, a obtener una orden para paralizar la operación de cualquier establecimiento de edad avanzada que funcione sin la licencia requerida por dicha Ley. El mecanismo de *injunction* contemplado el en Art. 14 de la Ley Núm. 94, es uno estatutario.

De igual forma, la referida Ley autoriza al Departamento a adoptar la reglamentación necesaria para la implantación de dicho estatuto. Artículo 10 de la Ley Núm. 94, 8 LPRA sec. 360. En virtud de ello, el Departamento adoptó el Reglamento Núm. 7349, mejor conocido como el *Reglamento para el Licenciamiento y Supervisión de Establecimientos para el Cuidado de Personas de Edad Avanzada*.

El Artículo IV, Sección 4.2, de dicho reglamento establece que el Departamento expedirá una licencia a todo solicitante que haya cumplido con todos los requisitos y leyes aplicables. Art. IV, Sec. 4.2, pág.

6 del Reglamento Núm. 7349. La licencia se otorgaría por un período máximo de dos (2) años.

Ahora bien, existen circunstancias en las que el Departamento podrá denegar, suspender o cancelar una licencia. La Sección 20.1 del Artículo XX del Reglamento Núm. 7349, enumera las razones por las que el Departamento podrá denegar, suspender o cancelar ésta. *Íd.*, pág. 29. En lo atinente al caso que nos ocupa, el inciso (d) de la referida sección dispone como una de las razones: "[c]ualquier acto o intención por parte de cualquier personal del establecimiento que indique o incurra en negligencia o maltrato hacia la persona de edad avanzada". *Íd.*

En la Sección 21.1 del Artículo XXI del Reglamento, *supra*, se establece el proceso de notificación de deficiencias y acciones administrativas. *Íd.*, pág. 30. Entre otras, el inciso (b) de dicha sección dispone que se tendrán que notificar las "[d]eficiencias en áreas de seguridad, alimentación, medicamento(s), higiene, requerirán corrección inmediata sin derecho a prórroga para la corrección." *Íd.*

Al cancelar una licencia, el Departamento deberá notificar la cancelación por correo, con acuse de recibo, a la dirección del establecimiento, según consta en la Oficina de Licenciamiento, o personalmente por escrito en el establecimiento. *Íd.*, Art. XXI, sec. 21.3, pág. 30. Conforme a la Sección 21.4 del Reglamento, todo poseedor o solicitante de licencia tendrá derecho a apelar la decisión de cancelar, suspender o denegar una licencia ante la Junta Adjudicativa del Departamento de la Familia a los quince (15) días del recibo de la notificación. *Íd.* Asimismo, el Artículo 9 de la Ley

Núm. 94, *supra*, dispone que el solicitante o tenedor de la licencia para operar un establecimiento para el cuidado de personas de edad avanzada tendrá derecho a apelar la determinación del Departamento cancelando, suspendiendo o denegando la licencia ante la Junta de Apelaciones del Departamento de la Familia, en el término que dispone la Sección 2165 del Título 3.

En relación a los procesos ante la Junta Adjudicativa, el Departamento adoptó el Reglamento Núm. 7757 del 5 de octubre de 2009, conocido como el *Reglamento para Establecer los Procedimientos de Adjudicación de Controversias ante la Junta Adjudicativa del Departamento de la Familia*. Ello con el propósito de establecer las normas pertinentes a la regulación de los procedimientos de adjudicación de controversias ante dicha Junta. Art. 3 del Reglamento Núm. 7757.

La parte adversamente afectada por una resolución u orden final de la Junta podrá solicitar la reconsideración de la misma dentro del término de veinte (20) días contados a partir del archivo en autos de la notificación de la resolución u orden. *Íd.*, Art. 21 Reglamento Núm. 7757.

### III.

Durante el juicio, el ELA logró probar la falta de una licencia vigente para operar un establecimiento dirigido al cuidado de personas de edad avanzada, más dos querellas por negligencia contra Hatillo Nursing Home. Ante la radicación de las querellas y la ausencia de una licencia, existe causa para considerar que el interdicto estatutario cumplía con los requisitos mencionados previamente para ser atendido. Específicamente notando la alegación de un daño a los

residentes de Hatillo Nursing Home y la infracción con el requerimiento de licenciamiento dispuesto en la ley.

La continua operación del Centro de Envejecientes sin una licencia vigente da base plena al ELA para solicitar y obtener el interdicto estatutario disponible en la Ley Núm. 94, mediante la cual, se solicitó el remedio en este caso. Es por ello, por lo que el foro primario erró al desestimar la demanda y denegar la concesión del interdicto estatutario.

## IV.

Por los fundamentos antes expuestos, se **REVOCA** el dictamen apelado, se declara con lugar la *Demanda* de *Injuction* Estatutario prestada por el Estado Libre Asociado de Puerto Rico, por sí y en representación del Departamento de la Familia, y en su consecuencia se ordena a Hatillo Nursing Home, Inc. a que no más tardar de cinco (5) días, a partir de la notificación de esta *Sentencia*, cese y desista de operar el establecimiento conocido como Hatillo Nursing Home. Igualmente, se devuelve el caso al Tribunal de Primera Instancia para que de forma consistente con lo aquí resuelto atienda cualquier asunto que pueda quedar pendiente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Lebrón Nieves concurre con la siguiente expresión: En vista de que no se acogieron los cambios, sugeridos, los cuales esta Juez considera necesarios, se cambia el voto concurrente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones