ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MARIO TORRES CINTRÓN,<br><br>Recurrida,<br><br>v.<br><br>NEGOCIADO DE LA POLICÍA DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO,<br><br>Peticionaria. | KLCE202301328 | *CERTIORARI* procedente de Tribunal de Primera Instancia, Sala Superior de Guayama.<br><br>Civil núm.: SA2023CV00003.<br><br>Sobre: *injunction.* |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 8 de enero de 2024.

El Negociado de la Policía de Puerto Rico, por conducto de la Oficina del Procurador General (Negociado), solicita que este Tribunal revoque la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, dictada y notificada el 17 de agosto de 2023[1]. En ella, el foro primario declaró sin lugar la solicitud de desestimación de la demanda de *injunction* preliminar y permanente presentada por el señor Mario Torres Cintrón (señor Torres), cuya finalidad es que se le devuelva de manera inmediata su licencia de armas y el arma incautada por el Negociado.

Conforme a lo planteado por el Negociado, y rechazado por el foro primario, el remedio extraordinario del *injunction* no constituye el mecanismo procesal adecuado en ley para lograr la devolución del arma y de su licencia, sino que al señor Torres le corresponde agotar el remedio administrativo provisto por la ley y el reglamento correspondientes. Es decir, que existen remedios adecuados en ley para vindicar los derechos que asisten al señor Torres, por lo que el *injunction* resulta improcedente.

---

[1] *Véase*, apéndice del recurso, a las págs. 16-26.

Número identificador

SEN2024_____

Evaluado el recurso a la luz del derecho aplicable, expedimos el auto de *certiorari*, revocamos la resolución del foro primario, y desestimamos la demanda instada en el caso del título.

I

Conforme surge de las alegaciones de la demanda instada el 11 de enero de 2023[2], allá para el 21 de abril de 2022, en la noche, el señor Torres se encontraba estacionado en el sector conocido como *Las Ochentas*, que ubica frente a la orilla de la playa en el Municipio de Salinas. Se encontraba acompañado de otra persona.

Allí y entonces, se le acercó un vehículo de motor tipo *pick-up*, con dos personas en su interior y otras cuatro en la parte trasera. De acuerdo con lo alegado por el señor Torres, inicialmente pensó que se trataba de un atraco, por lo que sacó su arma de fuego[3]. Las personas que se bajaron de la *pick-up* realizaron varias detonaciones con sus armas de fuego. El señor Torres hizo lo mismo.

En síntesis, el incidente narrado en la demanda culminó con el arresto del señor Torres. Los ocupantes de la *pick-up* resultaron ser agentes de la policía. Como consecuencia del incidente, al señor Torres le ocuparon su arma de fuego y su licencia de armas.

El apelado aduce, además, que por ese incidente no se le sometieron cargos criminales, no obstante, el Negociado mantiene ocupada el arma de fuego y su licencia.

El 16 de febrero de 2023, compareció el Negociado y solicitó la desestimación de la demanda[4]; ello, al amparo de la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V. El Negociado planteó que el remedio extraordinario del *injunction* resultaba improcedente. En síntesis, adujo que el señor Torres contaba con un remedio adecuado en ley; a decir, el procedimiento administrativo ante el Negociado, el cual no había agotado.

---

[2] *Véase*, apéndice del recurso, a las págs. 27-31.

[3] El arma de fuego en controversia es una *Glock*, modelo 30SF, calibre .45, serie BFFY341. El señor Torres contaba con la licencia de armas núm. 229175.

[4] *Véase*, apéndice del recurso, a las págs. 36-50.

Horas más tarde, el mismo 16 de febrero de 2023, el Negociado presentó un *Suplemento a Moción de Desestimación*[5], al cual adjuntó copia de una carta suscrita por el teniente coronel Roberto Rivera Miranda, Comisionado Auxiliar en Investigaciones Criminales, fechada el **17 de noviembre de 2022**, enviada por correo certificado con acuse de recibo al señor Torres[6]. En ella, el Negociado le informó de la revocación de su licencia de armas, debido a una investigación que se le había realizado y que había resultado desfavorable. Le apercibió, además, que contaba con un término de 15 días para solicitar una vista administrativa.

El 9 de marzo de 2023, el peticionario se opuso a la solicitud de desestimación e insistió en la devolución inmediata del arma de fuego y de su licencia[7]. En esta ocasión, aludió al Art. 2.08 de la Ley de Armas de 2020[8], 25 LPRA sec. 462g, que impone la obligación al tribunal que atienda un caso criminal grave, en que el acusado resulte con una determinación de no culpabilidad, final y firme, de ordenar la inmediata devolución de la licencia de armas y de todas las armas de fuego y municiones que se le hubieren ocupado al acusado.

El 28 de marzo de 2023, el Negociado replicó[9].

---

[5] *Véase*, apéndice del recurso, a las págs. 51-54.

[6] En este punto debemos destacar que una solicitud de desestimación al amparo de la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, debe limitarse al análisis de las alegaciones bien hechas en la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). No obstante, la propia regla dispone que, si en una moción en que se formula la defensa número 5 se exponen materias no contenidas en la alegación impugnada, **y estas no son excluidas por el tribunal**, "la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla". *Véase*, además, *Torres Capeles v. Rivera Alejandro*, 143 DPR 300, 309 (1997). Sin embargo, el mero hecho de someter un documento ajeno a las alegaciones de la demanda no impide la consideración de la moción al amparo de la Regla 10.2(5) de las de Procedimiento Civil.

En este caso, el foro primario examinó la notificación de la revocación de la licencia de armas del señor Torres, por lo que se abstuvo temporeramente de expedir el *injunction* preliminar hasta tanto auscultara tal hecho. Véase, *Resolución* del 17 de agosto de 2023, a la pág. 26 del apéndice del recurso.

[7] *Véase*, apéndice del recurso, a las págs. 61-84.

[8] No hemos encontrado referencia alguna a la fecha de expedición de la licencia de armas del señor Torres. **No obstante, en todo momento, este ha consignado que su licencia fue expedida al amparo de la Ley Núm. 168-2019, según enmendada, intitulada *Ley de Armas de Puerto Rico de 2020* (Ley de Armas de 2020), 25 LPRA secs. 461-467l. A la luz de ello, ese es el estatuto que rige nuestro análisis**.

[9] *Véase*, apéndice del recurso, a las págs. 85-91.

El 29 de marzo, notificada el 30 de marzo de 2023, el foro primario ordenó al señor Torres que informara si "los remedios" contenidos en la carta del 17 de noviembre de 2022, que le informaba de la revocación de su licencia de armas, eran "suficientes para garantizar el debido proceso de ley"[10].

El 10 de mayo de 2023, el señor Torres presentó su *Moción en cumplimiento de orden*[11]. En ella, adujo que la carta del 27 de noviembre de 2022 no había sido recibida y que, aun cuando hubiera sido recibida, la misma no satisfacía los requisitos para garantizar su derecho a un debido proceso de ley.

En respuesta, el 24 de mayo de 2023, el Negociado presentó una moción informativa[12] para notificar que, tras varias diligencias, había podido constatar que la carta del 27 de noviembre de 2022 había sido devuelta por el servicio postal por una deficiencia en la dirección. Por tanto, el Negociado optó por notificar nuevamente, con fecha del **23 de mayo de 2023**, la revocación de la licencia de armas del señor Torres y, nuevamente, le concedió un término de 15 días para solicitar la celebración de una vista administrativa.

Sometido el asunto, el foro primario emitió su *Resolución* el 17 de agosto de 2023, en la que denegó la solicitud de desestimación del Negociado. Citó a una vista argumentativa, a celebrarse el 16 de noviembre de 2023[13].

---

[10] *Véase*, apéndice del recurso, a la pág. 92. La orden dispuso textualmente como sigue: "PARTE DEMANDANTE EXPONGA SU POSICIÓN SOBRE LA CARTA DEL 17 DE NOVIEMBRE DE 2022. INDIQUE SI LOS REMEDIOS QUE SE INFORMAN EN LA CARTA SON SUFICIENTES PARA GARANTIZAR EL DEBIDO PROCESO DE LEY". (Mayúsculas en el original).

[11] *Íd.*, a las págs. 93-98.

[12] *Íd.*, a las págs. 99-104.

[13] La vista argumentativa fue re-señalada para el 1 de diciembre de 2023. *Íd.*, a la pág. 105. En esa fecha, según surge de la minuta correspondiente, a la cual accedimos a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), el foro primario optó por dejar sin efecto la vista y esperar por la determinación de este Tribunal de Apelaciones, en este recurso.

El 31 de agosto de 2023, el Negociado presentó su solicitud de reconsideración[14]. El 25 de octubre, notificada el 26 de octubre de 2023[15], el tribunal declaró sin lugar la solicitud de reconsideración.

Inconforme aún, el Negociado presentó este recurso el 27 de noviembre de 2023. En él, apuntó la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia al no desestimar con perjuicio la *Demanda* de *injunction* presentada por el señor Torres Cintrón, toda vez que el recurrido tenía que agotar los remedios administrativos disponibles ante el Negociado para revisar la revocación de su licencia de armas.

Tanto la parte peticionaria, como el recurrido en su oposición a la expedición al recurso presentada el 11 de diciembre de 2023, reiteraron sus respectivas posiciones, conforme argumentadas ante el foro primario.

Perfeccionado el recurso, resolvemos.

## II

## A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Claro está, la discreción para atender un recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[14] *Véase*, apéndice del recurso, a las págs. 3-13.

[15] *Íd.*, a las págs. 1-2.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de primera instancia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

B

La Regla 57 de las de Procedimiento Civil, 32 LPRA, Ap. V, y los Artículos 675 y 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521, *et seq.*, son las disposiciones de ley que regulan en nuestro ordenamiento el recurso del *injunction.* En particular, la Regla 57 de las de Procedimiento Civil establece la existencia de tres modalidades de *injunction*, a saber: (a) el entredicho provisional, (b) el *injunction* preliminar y (c) el *injunction* permanente. Véase, además, *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 486 (2014).

En Puerto Rico, el interdicto es el instrumento más eficaz para vindicar los derechos protegidos por nuestra Constitución. *Pedraza Rivera*

*v. Collazo Collazo*, 108 DPR 272, 276 (1979). Este remedio provisional se emite en cualquier momento de un pleito, después de celebrada una vista en la que las partes hayan presentado prueba en apoyo y en oposición de tal solicitud. *Next Step Medical v. Bromedicon et al*, 190 DPR, a la pág. 486; *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994). Su propósito fundamental es mantener el *statu quo,* hasta tanto se celebre un juicio en los méritos para adjudicar la controversia en cuestión. *Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo*, 173 DPR 304, 316 (2008).

Con la expedición de una orden de *injunction* preliminar, sea para requerir o prohibir un acto, se evita que la conducta del demandado produzca una situación que pueda convertir en académica los reclamos del demandante, y por ende, la sentencia que en su día se dicte. *Íd.* Este recurso extraordinario, además, va dirigido a prohibir u ordenar la ejecución de determinado acto, **con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en los casos en que no hay otro remedio adecuado en ley**. *E.L.A. v. Asociación de Auditores*, 147 DPR 669, 679 (1999). El Tribunal Supremo de Puerto Rico ha reiterado que la expedición de un *injunction* preliminar descansa en el ejercicio de la sana discreción del tribunal. *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 680 (1997).

Del mismo modo, el Tribunal Supremo estableció en *Puerto Rico Telephone Company v. Tribunal Superior*, 103 DPR 200, 202 (1975), y reiteró en *Asoc. Vec. Villa Caparra*, 173 DPR, a la pág. 319, los criterios que el foro judicial deberá evaluar al determinar si concede o no un *injunction* preliminar: "a) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; b) **su irreparabilidad o la existencia de un remedio adecuado en ley**; c) la probabilidad de que la parte promovente prevalezca en los méritos." (Énfasis nuestro).

Valga aclarar que tales criterios se encuentran debidamente recogidos en la Regla 57.3 de las de Procedimiento Civil de 2009,

disposición que añade, además, los siguientes criterios: "(d) la probabilidad de que la causa se torne en académica; (e) el impacto sobre el interés público del remedio que se solicita, y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria".

C

La Segunda Enmienda de la Constitución Federal, Emda. II, Const. EE.UU., LPRA, Tomo 1, consagra el derecho a portar armas. Esta protección constitucional se extendió a los estados de la unión y demás territorios. No obstante, **este derecho no es absoluto**. *McDonald v. City of Chicago*, 561 US 742, 786 (2010); *District of Columbia v. Heller*, 554 US 570, 626 (2008).

El Estado tiene la facultad para regular la posesión, portación y venta de armas con el fin de velar por la seguridad y bienestar público. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 37 (2018). Al respecto, el Tribunal Supremo expresó:

> […] Al interpretar esa disposición, el Tribunal Supremo de Estados Unidos ha expresado que ese derecho no es ilimitado. Es decir, no hay un derecho a poseer y portar cualquier arma de cualquier manera y para cualquier propósito. […] De esa forma quedó claro que el Estado está facultado para regular la posesión, portación y venta de las armas de fuego.
>
> Acorde con lo anterior, el Estado, mediante ese poder inherente de reglamentación y con el fin de promover una mayor seguridad y un mejor bienestar público para el Pueblo de Puerto Rico, aprobó [la Ley de Armas].

*Íd.* (Citas omitidas). Véase, además, *Pueblo v. Rodríguez López et al.*, 210 DPR 752, 767-769 (2022).

Conforme a dicho poder de reglamentación, y con el propósito de unificar los requisitos para la concesión de licencias, el Estado aprobó - con anterioridad a la jurisprudencia federal citada - la *Ley de Armas de Puerto Rico*, Ley Núm. 404-2000, según enmendada, 25 LPRA ant. sec. 455, *et seq.* Posteriormente, este estatuto fue derogado mediante la aprobación de la *Ley de Armas de Puerto Rico de 2020*, Ley Núm. 168-2019, según enmendada, 25 LPRA 461, *et seq.* (Ley de Armas de 2020)[16].

---

[16] Reiteramos que, conforme surge de la demanda instada en este caso, el señor Torres obtuvo su licencia de armas al amparo de la Ley de Armas de 2020. *Véase*, apéndice del

La Ley de Armas de 2020, le reconoce cierta facultad al Comisionado del Negociado de la Policía de Puerto Rico (Comisionado) para ejercer el poder que el Estado le delegó de reglamentación de la portación y posesión de armas. En lo pertinente, el Art. 2.02(d)(8) de la Ley de Armas de 2020 dispone:

> (8) El Comisionado podrá, cuando tenga motivos fundados y sospecha razonable y de forma pasiva, sin perturbar la paz y tranquilidad del investigado o interrumpir la privacidad del hogar, **realizar investigaciones que estime pertinentes después de otorgarse la licencia al peticionario, para investigar las querellas presentadas por proveer información falsa en contra de la persona con licencia de armas. Si después de realizada la investigación pertinente resultare que el peticionario ha dado información falsa a sabiendas en su solicitud o no cumple con los requisitos establecidos en este capítulo, se procederá de inmediato a la revocación e incautación de la licencia de armas y a la incautación de todas las armas de fuego** y municiones que tuviera el peticionario, quedando este sujeto a ser procesado por el delito de perjurio y por las correspondientes violaciones a este capítulo o cualquier otra ley aplicable. […].
>
> **Será deber ministerial del Comisionado investigar toda querella presentada**. La Oficina de Licencias de Armas[17] llevará un registro del resultado de las investigaciones al fin de mantener estadísticas sobre las querellas y los resultados de las investigaciones.
>
> .       .       .       .       .       .       .       .

25 LPRA sec. 462a(d)(8). (Énfasis nuestro).

De otra parte, concedida una licencia de armas al amparo de las exigencias del Art. 2.02(a) del estatuto, 25 LPRA sec. 462a(a), el proceso para su revocación tiene que regirse por los principios fundamentales del debido procedimiento de ley, según recogidos en la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601, *et seq.* A esos efectos, el Reglamento Núm. 9162 aprobado el 17 de marzo de 2020, intitulado *Reglamento para administrar la Ley de Armas de Puerto Rico de 2020*, dispone en su Capítulo 15(A)(25), sobre disposiciones generales, que: "Salvo que otra cosa se disponga expresamente, **todas las**

---

recurso, a la pág. 28, alegación núm. 5. Así pues, en este recurso aplicaremos los artículos pertinentes del estatuto de 2020.

[17] La Ley de Armas de 2020 creó la Oficina de Licencias de Armas, adscrita al Negociado de la Policía de Puerto Rico. 25 LPRA sec. 462.

**determinaciones que tengan que realizarse en virtud de la Ley 168-2019 supra se regirán por las disposiciones de vistas informales, adjudicaciones y reconsideraciones establecidas en la Ley 38-2017, según enmendada**, conocida como "Ley de Procedimiento Uniforme del Gobierno de Puerto Rico". (Énfasis nuestro).

Ahora bien, y por excepción, la propia Ley de Armas de 2020 provee para la devolución inmediata de un arma de fuego y de su licencia en una circunstancia muy particular. En lo pertinente, el Art. 2.08 de la Ley de Armas de 2020 establece el procedimiento a seguir luego de una determinación de causa probable para el arresto por la comisión de uno o más delitos graves o sus tentativas. Específicamente, dispone en su parte pertinente lo siguiente:

> […]. **[E]l tribunal ordenará la suspensión provisional e incautación de la licencia hasta una determinación final y firme en el proceso criminal.** El tribunal ordenará la ocupación inmediata de todas las armas de fuego y/o municiones de la persona con licencia de armas, las cuales se consignarán para su custodia en el Depósito de Armas y Municiones del Negociado de la Policía o en una armería. **De resultar el acusado con una determinación de no culpabilidad, final y firme, el juez vendrá obligado ministerialmente por esta Ley a ordenar la inmediata devolución de la licencia de armas y de todas las armas de fuego y municiones.** […].

25 LPRA sec. 462g. (Énfasis nuestro).

La lectura del Art. 2.08 de la Ley de Armas de 2020 revela que la Asamblea Legislativa encomendó, de manera expresa, al Tribunal de Primera Instancia la **obligación ministerial** de ordenar la devolución de un arma de fuego o de la licencia correspondiente; ello, sin embargo, **solo cuando el peticionario haya obtenido un veredicto o un fallo de no culpabilidad. Es decir, que el caso criminal haya sido atendido en sus méritos y el acusado haya sido absuelto por un jurado o por un tribunal de derecho**. Además, el Art. 2.08 exige que esa determinación haya advenido **final y firme**.

Una vez satisfechos todos esos requisitos, el tribunal carece de discreción para disponer otra cosa que no sea la devolución del arma y de la licencia.

**D**

Como norma general, los tribunales pueden atender toda controversia que sea traída ante su consideración y que sea justiciable. No obstante, a manera de excepción, la doctrina de agotamiento de remedios administrativos constituye una norma de abstención o autolimitación judicial. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008); *Asociación de Pescadores v. Marina Puerto del Rey*, 155 DPR 906, 916 (2001). Esta lo que postula es que:

> [U]na persona que desee obtener un remedio y acude primero a la agencia que posea jurisdicción sobre la cuestión, tendrá la obligación, como regla general, de utilizar todos los recursos, procedimientos, y las vías que administrativamente estén disponibles, antes de recurrir a la rama judicial.

*Ortiz Rivera v. Panel F.E.I.*, 155 DPR 219, 241 (2001).

La propia LPAUG dispone que dicha norma tiene ciertas excepciones, es decir, detalla aquellas circunstancias en que el trámite administrativo podría ser eludido, a saber: "[…] en el caso de que dicho remedio [administrativo] sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa." Sección 4.3 de la LPAUG, 3 LPRA sec. 9673.

En el contexto del recurso de *injunction*, el Tribunal Supremo ha expresado que solo puede eludirse el trámite administrativo a manera de excepción y en ciertas circunstancias particulares. Es decir,

> [c]ónsono con estas excepciones al requisito de agotamiento de remedios, hemos expresado que cuando "el agravio sea uno de 'patente intensidad al derecho del individuo que reclame urgente reparación', se puede utilizar el *injunction* para eludir el cauce administrativo". (Citas omitidas.) *Rivera v. E.L.A.*, 121 D.P.R. 582, 596 (1988).

*S.L.G. Flores-Jiménez v. Colberg*, 173 DPR, a la pág. 852.

A pesar de lo anterior, el Tribunal Supremo también ha sido enfático al aclarar que, para que el tribunal le permita a una parte, mediante un *injunction*, preterir los remedios administrativos, no basta con que estos sean lentos, sino que deben constituir "una gestión inútil e inefectiva o que produzcan un daño irreparable". *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR, a la pág. 852.

De otra parte, y partiendo de la premisa de la existencia de una jurisdicción concurrente entre el tribunal y la agencia, para determinar si es el foro administrativo o el judicial el que debe atender la reclamación en primera instancia, contamos con la doctrina de jurisdicción primaria. *Ortiz Rivera v. Panel F.E.I.*, 155 DPR, a las págs. 242-243. Esta responde a la deferencia que merecen las agencias por estar mejor preparadas que los tribunales para resolver asuntos relacionados a su área de conocimiento especializado. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Ed. Forum, Bogotá (2001), págs. 434-435. La mencionada doctrina cobija los principios de jurisdicción primaria exclusiva y la jurisdicción concurrente. *Rivera Ortiz v. Mun. de Guaynabo*, 141 DPR 257, 266-267 (1996).

La primera de estas surge cuando la ley otorga autoridad primaria al organismo administrativo para atender la reclamación. *Íd*. En consecuencia, los tribunales estarán impedidos de intervenir inicialmente en el asunto. *Íd*. Por otra parte, la jurisdicción concurrente "se da cuando la ley permite que la reclamación se inicie bien en el foro administrativo o en el judicial". *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 676 (2009). Esta doctrina de la jurisdicción primaria nos ayuda a concluir a cuál de los foros se debe acudir en primer término. *Íd*. Es decir, "[…] la doctrina sólo nos ayuda a concluir cuál de las vías, la administrativa o la judicial, se debe seguir en primer lugar a pesar de que ambos foros poseen jurisdicción legal [cita omitida]". *Íd.*

Al poseer ambos foros facultad para atender la reclamación, los tribunales se abstendrán de considerarla cuando la **controversia**

**contenga cuestiones de hechos que requieran la pericia o conocimiento especializado de la agencia** o ante la complejidad y especialidad que envuelve la reclamación. *Ferrer Rodríguez v. Figueroa*, 109 DPR 398, 402 (1980). En estos casos, es la agencia el organismo adecuado para considerar inicialmente la causa de acción.

> Ahora bien, **si el estatuto le confiere la jurisdicción al organismo administrativo, se trata de una jurisdicción estatutaria (exclusiva)**. […]. El concepto de *jurisdicción estatutaria o exclusiva* guarda relación con la jurisdicción primaria concurrente, pero es distinto en cuanto a su alcance y naturaleza. […]. En la jurisdicción exclusiva se trata de situaciones en que no aplica la doctrina de *jurisdicción primaria concurrente* porque la propia ley aclara que esta última no existe. Es decir, **el propio estatuto establece una jurisdicción exclusiva**. Véase *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992). En tales casos estamos frente a un mandato legislativo. […].

*SLG Semidey Vázquez v. ASIFAL*, 177 DPR, a la pág. 676-677. (Énfasis nuestro; bastardillas en el original; citas internas omitidas).

III

Este Tribunal intermedio es plenamente consciente de su obligación de no intervenir a destiempo en los procesos que se llevan a cabo ante el foro primario. No obstante, concluimos que el Tribunal de Primera Instancia, en este caso particular, erró en su interpretación del derecho aplicable, por lo que se nos impone la obligación de intervenir.

En primer lugar, coincidimos con la postura del Negociado de la Policía en cuanto a que el remedio extraordinario del *injunction* no es el mecanismo idóneo para ordenar la inmediata devolución del arma y de la licencia del señor Torres. Aun cuando el recurrido se ampara en su derecho constitucional a portar armas, tal derecho no es absoluto o irrestricto, ni justifica la preterición del cauce administrativo que está obligado a seguir ante el Negociado.

Por su parte, el tribunal, con excepción de lo claramente dispuesto en el Art. 2.08 de la Ley de Armas de 2020, 25 LPRA sec. 462g, tampoco tiene un deber ministerial de ordenar la devolución inmediata del arma de fuego. Como bien señala el señor Torres, él no ha sido acusado

formalmente de delito alguno, por lo que no cuenta con una absolución final y firme que obligue al foro primario a ordenar la devolución solicitada.

Inclusive, al aplicar la doctrina de jurisdicción primaria y sobre el agotamiento de remedios administrativos, nos resulta inescapable concluir que el foro administrativo con la pericia y el conocimiento especializado para dirimir la controversia en primera instancia es el Negociado de la Policía y no el tribunal.

De otra parte, y contrario a lo aseverado por el recurrido, el Negociado sí cuenta con un procedimiento para atender su reclamo. Él ya ha sido apercibido de que existe una investigación administrativa en su contra, que podría resultar en la devolución de su arma de fuego y de su licencia, o en su revocación. Ello, una vez culmine el proceso administrativo, el cual, según dispone el Reglamento Núm. 9162 de 17 de marzo de 2020, en su Capítulo 15(A)(25), tendrá que regirse por las disposiciones de vistas informales, adjudicaciones y reconsideraciones establecidas en la LPAUG.

Por lo tanto, a la luz de que el señor Torres cuenta con un remedio adecuado en ley que hace inmeritoria la concesión del remedio extraordinario del *injunction*, se impone la desestimación de su causa de acción.

IV

A la luz de los hechos y el derecho antes expuestos, este Tribunal expide el auto de *certiorari* y revoca la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 17 de agosto de 2023. En su consecuencia, este Tribunal ordena la **desestimación de la demanda** instada por el señor Mario Torres Cintrón el 11 de enero de 2023.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones